STROUD, Judge
 Defendant appeals no-contact order under North Carolina General Statute Chapter 50C which ordered him to surrender his firearms. Because the trial court had no authority under North Carolina General Statute Chapter 50C to order defendant not to possess or purchase any firearms, to surrender his firearms, or to revoke his concealed carry permit, we reverse and remand the portion of the order with these provisions. We affirm the remaining portions of the order.
 I. Background
 

 On or about 23 May 2017, plaintiff filed COMPLAINT FOR NO-CONTACT ORDER FOR STALKING OR NONCONSENSUAL SEXUAL CONDUCT on form AOC-CV-520, Rev. 8/14 against defendant under North Carolina General Statute § 50C-2. Plaintiff alleged defendant grabbed her breasts without her consent, came to her house "making false accusations" and refused to leave, and had his erectile dysfunction medication delivered to her home. Plaintiff marked boxes on the form requesting an
 
 ex parte
 
 temporary order and a permanent no-contact order.
 
 [1]
 
 Plaintiff also marked all of the boxes 4 through 9 on the form which request that defendant be ordered not to visit her or interfere with her in various ways and to stay away from her children's schools. Plaintiff made no request in the blank areas under box 10 entitled "Other: (specify)[.]" Plaintiff also made no allegations regarding firearms or any threat of physical violence.
 

 The trial court entered an
 
 ex parte
 
 TEMPORARY NO-CONTACT ORDER FOR STALKING OR NONCONSENSUAL SEXUAL CONDUCT, form AOC-CV-523, rev. 10/15, granting the relief as plaintiff requested and setting a hearing on the permanent no-contact order on 2 June 2017. On 2 June 2017, the trial court held the hearing on the permanent no-contact order; plaintiff and defendant were both present and defendant was represented by counsel. Plaintiff did not mention guns or make any request related to guns during her testimony. Defendant mentioned during his testimony he was a former FBI agent, retired police officer, and a veteran; he owned a firearm, and was "authorized to be armed in fifty states twenty-four seven." The trial court entered a NO-CONTACT ORDER FOR STALKING OR NONCONSENSUAL SEXUAL CONDUCT on form AOC-CV-524, Rev. 4/17 under North Carolina General Statute § 50C-7. The order included findings of fact regarding nonconsensual sexual conduct by defendant and concluded that defendant had "committed acts of unlawful conduct against the plaintiff."
 

 In the decree portion of the order, the trial court checked boxes 1 through 6, ordering defendant not to commit various acts such as visiting or stalking the plaintiff. The trial court also checked box 7, entitled "Other: (specify)" and made a handwritten notation ordering:
 

 Defendant shall surrender to the NH Sheriff's office any and all firearms that he owns, to be held by NH Sheriff
 for the duration of this order. Defendant's concealed carry permit is revoked for the period of this order. Defendant is prevented from purchasing possessing any firearm for the term of this order.
 

 Under North Carolina General Statute § 50C-8(b), "[a] permanent civil no-contact order shall be effective for a fixed period of time not to exceed one year[,]" but it can be extended under § 50C-8(c). N.C. Gen. Stat. § 50C-8 (2017).
 

 Defendant filed a timely notice of appeal from the order.
 

 II. Surrender of Firearms
 

 Defendant first contends that the trial court exceeded its authority as granted in North Carolina General Statute § 50C-7 by ordering him to surrender his firearms, not to purchase or possess any firearms, and revoking his concealed carry permit. The order was entered under North Carolina General Statute, Chapter 50C, and presents a question of statutory interpretation. "Questions of statutory interpretation are questions of law, which are reviewed
 
 de novo
 
 by an appellate court."
 
 State v. Largent
 
 ,
 
 197 N.C. App. 614
 
 , 617,
 
 677 S.E.2d 514
 
 , 517 (2009) (citations and quotation marks omitted).
 

 North Carolina General Statute § 50C-7 (2017) provides,
 

 Upon a finding that the victim has suffered an act of unlawful conduct committed by the respondent, a permanent civil no-contact order may issue if the court additionally finds that process was properly served on the respondent, the respondent has answered the complaint and notice of hearing was given, or the respondent is in default. No permanent civil no-contact order shall be issued without notice to the respondent. Hearings held to consider permanent relief pursuant to this section shall not be held via video conference.
 

 Nothing in North Carolina General Statute Chapter 50C addresses surrender of firearms. North Carolina General Statute § 50C-5 sets forth a list of remedies for a civil no-contact order:
 

 (b) The court may grant one or more of the following forms of relief in its orders under this Chapter:
 

 (1) Order the respondent not to visit, assault, molest, or otherwise interfere with the victim.
 

 (2) Order the respondent to cease stalking the victim, including at the victim's workplace.
 

 (3) Order the respondent to cease harassment of the victim.
 

 (4) Order the respondent not to abuse or injure the victim.
 

 (5) Order the respondent not to contact the victim by telephone, written communication, or electronic means.
 

 (6) Order the respondent to refrain from entering or remaining present at the victim's residence, school, place of employment, or other specified places at times when the victim is present.
 

 (7) Order other relief deemed necessary and appropriate by the court, including assessing attorneys' fees to either party.
 

 N.C. Gen. Stat. § 50C-5 (2017). North Carolina General Statute § 50C-11 further provides that "[t]he remedies provided by this Chapter are not exclusive but are additional to other remedies provided under law." N.C. Gen. Stat. § 50C-11 (2017).
 

 This case presents the question of what "other relief" or "additional" remedies the trial court has statutory authority to order, and in particular, whether the court may order surrender of firearms. N.C. Gen. Stat. §§ 50C-5 ; -11. Because Chapter 50B is a similar statutory scheme which addresses orders issued to protect against acts of domestic violence ("DVPO") arising in a "personal relationship" it is useful to compare the language of the two Chapters and consider the types of relief allowed under Chapter 50B to determine whether surrender of firearms is also a proper remedy under Chapter 50C.
 
 [2]
 

 Compare generally
 
 N.C. Gen. Stat. Chap. 50B, 50C (2017). Chapter 50C addresses those situations
 
 not
 
 covered by Chapter 50B, where the parties are not in a "personal relationship."
 
 See
 

 Tyll v. Willets
 
 ,
 
 229 N.C. App. 155
 
 , 159,
 
 748 S.E.2d 329
 
 , 331 (2013) (" North Carolina General Statute § 50C-1 incorporates the definitions of 'personal relationship' from North Carolina General Statute
 Chapter 50B and excludes them from the category of relationships upon which a Chapter 50C no-contact order can be premised.
 
 See
 
 N.C. Gen. Stat. § 50C-1(8). In doing so, Chapter 50C provides a method of obtaining a no-contact order against another person when the relationship is not romantic, sexual, or familial.
 
 See
 
 N.C. Gen. Stat. §§ 50B-1(b), 50C-1(8).").
 

 North Carolina General Statute § 50B-3(a) sets forth similar types of relief as § 50C-5.
 
 Compare
 
 N.C. Gen. Stat. §§ 50B-3 ; 50C-5 (2017). North Carolina General Statutes 50B-3 and 50C-5 are not identical, since Chapter
 50B includes provisions needed to address possession of a residence, child custody and support, and property issues common between those in a "personal relationship[.]"
 
 Compare
 
 N.C. Gen. Stat. §§ 50B-3 ; 50C-5;
 
 see generally
 
 N.C. Gen. Stat. 50B-1. North Carolina § 50B-3(a)(13) is a "catch-all" provision which allows the trial court to "[i]nclude
 
 any
 
 additional prohibitions or requirements the court deems necessary to protect any party or any minor child." N.C. Gen. Stat. § 50B-3(a)(13) (emphasis added). Our Supreme Court has interpreted the "catch-all" provision of § 50B-3(a)(13) and held that the word "any" does not give the trial court unlimited power to order additional relief.
 
 See
 

 State v. Elder
 
 ,
 
 368 N.C. 70
 
 ,
 
 773 S.E.2d 51
 
 (2015).
 

 Notably, in comparing Chapters 50B and 50C, Chapter 50C does not mention firearms, while North Carolina General Statute § 50B-3.1, entitled, "Surrender and disposal of firearms; violations; exemptions[,]" sets forth detailed requirements for any DVPO which orders surrender of firearms.
 
 See
 
 N.C. Gen. Stat. § 50B-3.1 (2017). The trial court must make specific findings of fact in the DVPO to justify ordering the surrender of firearms.
 
 See
 
 id.
 

 The statute also sets forth the procedure for returning weapons to their owner and disposal of firearms not returned.
 
 See
 
 id.
 

 Here, neither the complaint nor the
 
 ex parte
 
 no-contact order mentioned firearms-nor does Chapter 50C-so defendant had no notice of the possibility of an order requiring surrender. Since the trial court imposed this provision after the hearing,
 
 sua sponte
 
 , neither party had an opportunity to address it at the hearing or to object.
 

 In
 
 State v. Elder
 
 , the trial court granted a DVPO which, in addition to the relief enumerated by § 50B-3 provided
 

 that any Law Enforcement officer serving this Order shall search the Defendant's person, vehicle and residence and seize any and all weapons found. Notably, the court made no findings or conclusions that probable cause existed to search defendant's property or that defendant even owned or possessed a weapon.
 

 Id.
 

 at 71
 
 ,
 
 773 S.E.2d at 52
 
 (quotation marks and brackets omitted). Upon conducting the search directed by the DVPO, law enforcement officers discovered a marijuana growing operation in the defendant's home, leading to criminal charges.
 
 See
 
 id.
 

 In his criminal case, our Supreme Court held that the trial court should have allowed the defendant's motion to suppress the evidence obtained from their search of his home under the DVPO because the district court did not have authority to order a search of a home without probable cause or a search warrant:
 

 Our General Assembly enacted the Domestic Violence Act, N.C.G.S. Chapter 50B, to respond to the serious and invisible problem of domestic violence. Subsection 50B-3(a) states that if a court finds a defendant committed an act of domestic violence, the court must grant a DVPO restraining the defendant from further acts of domestic violence. The statute then lists thirteen types of relief that the court may order in a DVPO. The first twelve are specific prohibitions or requirements imposed on a party to the DVPO. The last type of relief is a catch-all provision that authorizes the court to order any additional prohibitions or requirements the court deems necessary to protect any party or any minor child.
 

 We disagree with the State's contention that the General Assembly intended a broad interpretation of the word "any." The plain language of section 50B-3 does not authorize courts to order law enforcement to search a defendant's person, vehicle, or residence under a DVPO. The word "any" in the catch-all provision modifies "additional prohibitions or requirements," N.C.G.S. § 50B-3(a)(13), and this provision follows a list of twelve other prohibitions or requirements that the judge may impose on a party to a DVPO. For example, the court may prohibit a party from harassing the other party or from purchasing a firearm, and it may require a party to provide housing for his or her spouse and children, to pay spousal and child support, or to complete an abuser treatment program. It follows, then, that the catch-all provision limits the court to ordering a party to act or refrain from acting; the
 provision does not authorize the court to order law enforcement, which is not a party to the civil DVPO, to proactively search defendant's person, vehicle, or residence.
 Not only is this interpretation demanded by the plain language of the statute, but it is consistent with the protections provided by the Federal and State Constitutions. The Federal and State Constitutions protect fundamental rights by limiting the power of the government. Yet under the State's broad interpretation here, district courts would have seemingly unfettered discretion to order a broad range of remedies in a DVPO so long as the judge believes they are necessary for the protection of any party or child. This interpretation contravenes the Fourth Amendment to the United States Constitution and Article I, Section 20 of the North Carolina Constitution.
 

 Id.
 

 at 72-73
 
 ,
 
 773 S.E.2d at 53
 
 (citations and quotation marks omitted).
 

 Although the particular issue in
 
 Elder
 
 is different, the same sort of analysis applies here.
 
 See generally
 

 Elder
 
 ,
 
 368 N.C. 70
 
 ,
 
 773 S.E.2d 51
 
 . Furthermore, the list of relief in North Carolina General Statute Chapter 50C is even more limited than the list of remedies in Chapter 50B;
 
 compare
 
 N.C. Gen. Stat. Chap. 50B; 50C, all of the remedies in § 50C-5 are "ordering a party to act or refrain from acting" in relationship to, in this case, plaintiff.
 
 Elder
 
 ,
 
 368 N.C. at 72-73
 
 ,
 
 773 S.E.2d at
 
 53 ;
 
 see
 
 N.C. Gen. Stat. § 50C-5. If we were to interpret Chapter 50C to allow the district court to order,
 
 sua sponte
 
 , surrender of firearms, revocation of a concealed carry permit, and forbidding the purchase or possession of firearms, even with no evidence of threatened use of a firearm or any threat of physical harm, this interpretation would allow far broader relief than North Carolina General Statute Chapter 50B does, with no notice to a defendant that he may be required to surrender or not possess firearms.
 
 See generally
 

 Elder
 
 ,
 
 368 N.C. at 72-73
 
 ,
 
 773 S.E.2d at
 
 53 ; N.C. Gen. Stat. Chap. 50B. Even if this order had been entered under Chapter 50B, the order requiring surrender of firearms would have been in error because there was no evidence to support the required findings of fact under North Carolina General Statute § 50B-3.1.
 
 See
 
 N.C. Gen. Stat. § 50B-3.1. District Courts do not have "unfettered discretion to order a broad range of remedies" in a Chapter 50B protective order "so long as the judge believes they are necessary for the protection of any party or child" nor do they have "unfettered discretion" under Chapter 50C to order any relief the judge believes necessary to protect a victim.
 
 Elder
 
 ,
 
 368 N.C. at 73
 
 ,
 
 773 S.E.2d at 52
 
 . We understand that the motivation of the trial court was simply to protect plaintiff, but the district court does not have authority under Chapter 50C
 
 sua sponte
 
 to order defendant to
 surrender his firearms, revoke his concealed carry permit, or to order him not to purchase or possess any firearms during the period of the no-contact order. We reverse these provisions of the no-contact order.
 

 III. No-Contact Order
 

 Defendant also argues that the trial court should not have entered a no-contact order because he did not commit the acts plaintiff alleged and testified about at the hearing. But defendant's brief acknowledges there was sufficient evidence to support the trial court's findings of fact: "Although the Defendant disagrees with the Court's actual finding, the Defendant concedes that the Court had the right and opportunity to view the evidence in the way the Court did and that the evidence, so construed, may uphold an Order for Non-Consensual Sexual Conduct." Defendant does not actually challenge either the findings of fact or the conclusions of law in the no-contact order, so we affirm the order except as to the provisions regarding firearms discussed above.
 

 IV. Conclusion
 

 The district court exceeded its authority under North Carolina General Statute Chapter 50C by ordering defendant to surrender his firearms, revoking his concealed carry permit, and ordering him not to purchase or possess firearms during the period of the no-contact order. We reverse the provisions of the order addressing firearms. We remand to the trial court to determine if any additional order is needed to direct the New Hanover
 Sheriff's Office to return defendant's firearms, and if so, to enter such an order. We affirm the remainder of the order.
 

 AFFIRMED in part; REVERSED and REMANDED in part.
 

 Judges DAVIS and ARROWOOD concur.
 

 Chapter 50B addresses parties in a "personal relationship" which is defined as "(1) [a]re current or former spouses; (2) Are persons of opposite sex who live together or have lived together; (3) Are related as parents and children, including others acting in loco parentis to a minor child, or as grandparents and grandchildren. For purposes of this subdivision, an aggrieved party may not obtain an order of protection against a child or grandchild under the age of 16; (4) Have a child in common; (5) Are current or former household members; (6) Are persons of the opposite sex who are in a dating relationship or have been in a dating relationship. For purposes of this subdivision, a dating relationship is one wherein the parties are romantically involved over time and on a continuous basis during the course of the relationship. A casual acquaintance or ordinary fraternization between persons in a business or social context is not a dating relationship." N.C. Gen. Stat. 50B-1(b) (2017).