IN THE COURT OF APPEALS OF NORTH CAROLINA

2021-NCCOA-397

No. COA20-846

Filed 3 August 2021

Mecklenburg County, No. 20-CVD-8127

WILLIAM J. PARRA ANGARITA, Plaintiff,

v.

MARGUERITE EDWARDS, Defendant.

Appeal by Defendant from an order entered on 5 August 2020 by Judge Paulina Havelka in Mecklenburg County District Court. Heard in the Court of Appeals 12 May 2021.

*William J. Parra Angarita,* pro se.

*Marguerite Edwards,* pro se.

JACKSON, Judge.

The issue in this case is whether the trial court erred or abused its discretion in granting a civil no-contact order against a *pro se* litigant. We conclude that the trial court committed no error or abuse of discretion and affirm the order.

## I. Factual and Procedural Background

William Parra Angarita ("Plaintiff") and Marguerite Edwards ("Defendant") are next-door neighbors on Dominion Village Drive in Charlotte, North Carolina. Beginning sometime in February or March of 2020, Defendant began to suspect that

someone was breaking into her house. On 7 March 2020, she reported the suspected break-ins to the police. She began to suspect Plaintiff was the perpetrator and reported his name to the police. According to Plaintiff, he has never been contacted by the police. Defendant has a security system and multiple cameras installed but has no video evidence of Plaintiff breaking into her house. Defendant claims to be suffering lasting health consequences due to the alleged break-ins.

¶ 3 From time to time, Plaintiff's children would accidentally throw soccer balls into Defendant's fenced, locked yard. On 23 March 2020, Plaintiff received a phone call from Defendant requesting that his children stop throwing balls into her yard. During this call, Defendant used "harsh language" towards Plaintiff's children. Defendant called Plaintiff again on 6 April 2020, this time threatening to call the police and making offensive, racist statements about Plaintiff and his family.

¶ 4 A series of escalating interactions ensued. Following a verbal altercation about the balls, Defendant threatened to have Plaintiff arrested, and Defendant alleges that at some point Plaintiff "came to her front door and rang her door bell several times in a rage." Defendant responded by posting a sign on her door that accused Plaintiff of breaking into her house and notifying the homeowners' association of the alleged break-ins.

¶ 5 Throughout these events, Defendant sent Plaintiff at least eight text messages with "derogatory, defamatory, and incendiary language," including some express or

implied threats. Defendant also yelled accusations and racist remarks at Plaintiff's family from her property. Plaintiff's wife and sister-in-law testified that Defendant shouted accusations and racist remarks directly at them on multiple occasions. Plaintiff states that the behavior of Defendant has caused significant stress for him and his family.

¶ 6 On 8 July 2020, Plaintiff filed a complaint in Mecklenburg County District Court, seeking a permanent civil no-contact order against Defendant under N.C. Gen. Stat § 50C-2, and requesting that the court bar Defendant from "verbally abusing any family members living in [Plantiff's] household and to stop yelling and shouting from her property towards ours," among other remedies. Defendant was served with the complaint on 18 July 2020. On 28 July 2020, Defendant filed (but apparently did not serve upon Plaintiff) an answer to the complaint and a written motion to dismiss.

¶ 7 A hearing was held on 4 August 2020 before the Honorable Paulina Havelka. Neither Plaintiff nor Defendant was represented by an attorney. During the hearing, testimony was heard from Plaintiff, Plaintiff's wife, and Plaintiff's sister-in-law, who described the harassment they had faced from Defendant over the past year. Defendant also testified at the hearing, stating her belief that Plaintiff was continually breaking into her house, tampering with her belongings, and "doing criminal activities for unknown reasons." At several points, both Plaintiff and Defendant attempted to introduce documentary exhibits (such as a notarized

statement from their neighbors, or emails from the local police department) but the court refused to admit the exhibits after ruling they were inadmissible hearsay.

¶ 8        At the conclusion of the parties' testimony, the trial court granted Plaintiff a permanent no-contact order against Defendant pursuant to § 50C-7. The trial court concluded that

> [Plaintiff] has suffered unlawful conduct by [D]efendant in that: Defendant continuously harasses Plaintiff and Plaintiff's household. Posts letters on Defendant's door with an arrow stating Plaintiff is a "dangerous criminal." In open court Defendant stated "Plaintiff smells" and does so while in her yard at Plaintiff and Plaintiff's family.

¶ 9        In its order, the trial court checked boxes indicating that Defendant: (1) shall not "visit, assault, molest, or otherwise interfere with" Plaintiff; (2) "cease harassment" of Plaintiff; (3) "not abuse or injure" Plaintiff; and (4) not contact Plaintiff "by telephone, written communication, or electronic means" for a period of one year. The trial court also added an additional handwritten order that Defendant "shall obtain a mental health evaluation," with a review hearing scheduled for 8 December 2020.

¶ 10        On 5 August 2020, Defendant contacted the clerk of court and told her that she was having difficulty reading the court's written order due to its legibility. Later that same day, the court issued an "amended" no-contact order, that was otherwise identical with the exception of checking an additional box that "the Defendant cease

stalking the Plaintiff." Defendant filed a timely written notice of appeal from the court's amended order on 14 August 2020.

## II. Analysis

¶ 11 In her *pro se* appeal, Defendant raises five arguments, contending that: (1) the trial court erred by misquoting her in the findings section of the no-contact order; (2) the trial court was "exceptionally hostile" to Defendant during the hearing; (3) the trial court erred by making an improper amendment to the no-contact order; (4) the trial court erred by assigning her a mental health evaluation; and (5) the trial court erred by failing to consider her motion to dismiss. We disagree and hold that the trial court committed no error or abuse of discretion.

### A. Preservation

¶ 12 As a threshold matter, we must address whether Defendant has properly preserved her arguments for appellate review. Our Appellate Rules provide that

> [i]n order to preserve an issue for appellate review, a party must have presented to the trial court a timely request, objection, or motion, stating the specific grounds for the ruling the party desired the court to make . . . It is also necessary for the complaining party to obtain a ruling upon the party's request, objection, or motion.

N.C. R. App. P. Rule 10(a)(1).

¶ 13 In interpreting this Rule, we have long held that "where a theory argued on appeal was not raised before the trial court, the law does not permit parties to swap horses between courts in order to get a better mount in the appellate courts." *State*

*v. Holliman*, 155 N.C. App. 120, 123, 573 S.E.2d 682, 685 (2002) (internal marks and citations omitted). Accordingly, where a defendant "impermissibly presents a different theory on appeal than argued at trial, [the] assignment of error [is] not properly preserved" and is "waived by [the] defendant." *Id.* at 124, 573 S.E.2d at 686.

¶ 14      Here, Defendant has failed to preserve two issues—the trial court's failure to consider her motion to dismiss, and the trial court's alleged "undue hostility" during the hearing—because Defendant did not raise either of these issues before the trial court.[1] However, in our discretion we nevertheless choose to review all of Defendant's arguments, as none of the issues raised by Defendant show any error by the trial court.

¶ 15      We have previously addressed a similar scenario in *Seafare Corp. v. Trenor Corp.*, wherein the *pro se* defendants raised a number of issues on appeal that had not been raised before the trial court. Despite this waiver, we nevertheless reviewed the defendants' assertions of error, explaining:

> Defendants next assign error to the admission of much of
> plaintiff's evidence. Defendants failed, however, to object
> to the admission of any evidence . . . . An unrepresented
> party is not relieved of the duty to object to evidence in

---

[1] The remainder of Defendant's arguments were properly preserved because they involved either findings of fact or conclusions of law in the trial court's written order, or actions that the trial court took following the conclusion of the hearing (such as the amendment of the no contact order). *See* N.C. R. App. P. 10(a)(1) (noting that certain issues may be "deemed preserved" without any action taken by the appellant, such as "whether the judgment is supported by the verdict or by the findings of fact and conclusions of law").

> order to preserve the issue for appeal. Nevertheless, we have considered defendants' arguments set forth in their brief and conclude there was no prejudicial error.

*Seafare Corp. v. Trenor Corp.*, 88 N.C. App. 404, 413, 363 S.E.2d 643, 650-51 (1988) (internal marks and citations omitted).

¶ 16 Likewise, despite Defendant's failure in the present case to preserve her arguments for appellate review, we exercise our discretion under Rule 2 to consider these arguments and conclude that the trial court committed no error. *See* N.C. R. App. P. 2.

**B. Misquotation**

¶ 17 Defendant first argues that the trial court erred by misquoting her in the findings section of the no-contact order. We disagree and discern no error in the trial court's findings of fact. We review a trial court's findings of fact only to establish that they were supported by competent evidence:

> [W]hen the trial court sits without a jury, the standard of review on appeal is whether there was competent evidence to support the trial court's findings of fact and whether its conclusions of law were proper in light of such facts. While findings of fact by the trial court in a non-jury case are conclusive on appeal if there is evidence to support those findings, conclusions of law are reviewable *de novo*.

*Romulus v. Romulus*, 215 N.C. App. 495, 498, 715 S.E.2d 308, 311 (2011) (internal marks and citations omitted).

¶ 18 Defendant's argument centers around an alleged misquotation by the trial

court in the "Findings" section of the no-contact order. The trial court wrote that "In open court Defendant stated 'Plaintiff smells' and does so while in her yard at Plaintiff and Plaintiff's family." Defendant contends that this misquotation is incorrect and is grounds for reversal. We disagree.

¶ 19 While it is true that Defendant never spoke those exact words during the hearing, she did say a number of closely related phrases in her written and oral testimony. In her answer to Plaintiff's complaint and during the hearing, she stated, "I smelled a bad smell when I passed by the Plaintiff's open garage door" and "I knew who was breaking into my house . . . . I knew it was him by the smell." Plaintiff testified that Defendant texted her statements like "[e]very time I smell the horrible odor you put in my house I want to yell at you criminal" and "[m]y house stinks like skunks from you and your people, you stinky criminal." During cross examination, Plaintiff asked Defendant "can you explain how you say that [it] is a fact that I've been breaking into your house?" Defendant replied, "[t]he smell."

¶ 20 This Court has previously upheld findings of fact by trial courts in civil cases that paraphrase testimony and draw reasonable inferences therefrom. For example, in *In re Botros*, 265 N.C. App. 422, 828 S.E.2d 696 (2019), the respondent challenged the trial court's findings of fact by arguing that the findings did not accurately quote the words he spoke during the hearing. *Id.* at 429, 828 S.E.2d at 703. Specifically, the trial court's order found that "[i]mmediately upon appearing before [the trial

court, the respondent] requested five minutes to 'collect' himself. [Respondent] appeared somewhat distressed and disoriented." *Id.* Whereas, the video recording of the proceeding revealed that he requested to "have one – one moment" before beginning, "without saying it was to 'collect' himself." *Id.* at 430, 828 S.E.2d at 703. This Court held that "[w]hile [the respondent] may not have used the precise words of the findings in his testimony, the findings reasonably paraphrase [his] testimony or *are inferences reasonably drawn from that testimony*." *Id.* (internal marks and citation omitted).

¶ 21        Here, the trial court's paraphrase that "Defendant stated 'Plaintiff smells'" was a reasonable inference from the variety of olfactory assertions made by Defendant during the hearing and in her written answer. There was thus sufficient "evidence as a reasonable mind might accept as adequate to support a conclusion" that Defendant had stated, in effect, that "Plaintiff smells." We hold that the trial court did not err by paraphrasing Defendant.

### C. Exceptional Hostility

¶ 22        Next, Defendant alleges that the trial court acted with undue hostility during the hearing, as indicated by the judge's interruptions, tone, and general treatment of her. We disagree and find no error by the trial court.

¶ 23        The North Carolina Constitution requires that "right and justice shall be administered without favor, denial, or delay." N.C. Const. art. I, § 18. Accordingly,

"[t]he law imposes on the trial judge the duty of absolute impartiality." *State v. Fleming,* 350 N.C. 109, 125-26, 512 S.E.2d 720, 732 (1999) (internal marks and citation omitted). However, "[t]he trial judge also has the duty to supervise and control a defendant's trial, including the direct and cross-examination of witnesses, to ensure fair and impartial justice for both parties." *Id.* at 126, 512 S.E.2d at 732. "In evaluating whether a judge's comments cross into the realm of impermissible opinion, a totality of the circumstances test is utilized." *Id.* (internal marks and citation omitted).

Applying these principles to the remarks of the trial court here, and after conducting a thorough review of each alleged instance of improper conduct or hostility on the part of the trial judge, we detect no prejudicial error and reject Defendant's claim of "exceptional hostility."

Turning first to the interruptions, it is apparent that the trial judge interrupted only in the interests of expediency and to bring a *pro se* Defendant into compliance with the rules of evidence.[2] In this regard, the trial court's actions were helpful to Defendant, if anything. For example, the trial court avoided wasting time

---

[2] *See, e.g.,* N.C. Gen. Stat. § 8C-1, Rule 611(a) (2019) ("The court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment.").

by interrupting Defendant in this exchange:

> MS. EDWARDS: When you put in the complaint, why didn't you complain about the break-ins and all that? Why did you not put that in your complaint when you filed it on – [interruption]
>
> THE COURT: I'm going to object to that and sustain it, ma'am. He's already testified that the only reason he thought you had problems was over balls.

¶ 26 Likewise, Defendant's remaining arguments concerning the trial court's tone and treatment of Defendant were comfortably within the discretion of the trial judge. "A presiding judge is given large discretionary power as to the conduct of a trial. Absent controlling statutory provisions or established rules, all matters relating to the orderly conduct of the trial are within his discretion." *State v. Higginbottom*, 312 N.C. 760, 769-70, 324 S.E.2d 834, 841 (1985) (internal citation omitted).

¶ 27 Moreover, even assuming *arguendo* that the trial judge had displayed bias, "[i]n a *non-jury* case where the trial judge develops a bias or prejudice toward one party and where there is no evidence this bias or prejudice arose from any source outside the evidence and arguments presented in the case, the judgment entered by the trial court will be affirmed if it is otherwise properly entered." *Sowers v. Toliver*, 150 N.C. App. 114, 120, 562 S.E.2d 593, 597 (2002) (emphasis added) (Greene, J., concurring). Here, there is likewise no evidence that the trial court's attitude towards Defendant arose from any sort of personal bias, but rather from a disapproval of

Defendant's disorganized arguments and mode of presenting evidence. Accordingly, the trial court did not abuse its discretion in its interactions with Defendant during the hearing.

## D. Improper Amendment

We next address Defendant's argument that the trial court erred by improperly amending the no-contact order. We disagree and hold that the trial court did not abuse its discretion by amending the order.

Here, the trial court issued an amended no-contact order following Defendant's request for a more legible copy of the order. The amended order contained identical content to the original order, with the exception of an additional box checked in the "Order" section: "The defendant cease stalking the plaintiff."

Rule 60(a) of the North Carolina Rules of Civil Procedure permits a judge to *sua sponte* correct clerical mistakes in judgments resulting from an oversight or omission:

> Clerical mistakes in judgments, orders or other parts of the record and errors therein arising from oversight or omission may be corrected by the judge at any time on his own initiative or on the motion of any party and after such notice, if any, as the judge orders. During the pendency of an appeal, such mistakes may be so corrected before the appeal is docketed in the appellate division, and thereafter while the appeal is pending may be so corrected with leave of the appellate division.

N.C. Gen. Stat. § 1A-1, Rule 60(a) (2019).

¶ 31        "Relief under Rule 60(a) is limited to the correction of clerical errors, and it does not permit the correction of serious or substantial errors." *In re Estate of Meetze*, 272 N.C. App. 475, 479, 847 S.E.2d 220, 224 (2020) (internal marks and citations omitted). A change in an order is considered substantive and outside the boundaries of Rule 60(a) "when it alters the effect of the original order." *Id.* "A trial court's order correcting a clerical error under Rule 60(a) is subject to the abuse of discretion standard." *Id.*

¶ 32        "'Clerical mistakes' are typographical errors, mistakes in writing or copying something into the record, or other, similar mistakes that are not changes in the court's reasoning or determination." *In re J.K.P.*, 238 N.C. App. 334, 343, 767 S.E.2d 119, 124 (2014). For example, in *In re J.K.P.*, this Court concluded that "that the term 'clerical mistakes' includes the inadvertent checking of boxes on forms." *Id.* at 343, 767 S.E.2d at 125 (internal marks and citation omitted). In that case, the trial court spoke with the respondent about the risks associated with proceeding *pro se* and asked the respondent to read and sign a waiver-of-counsel form. *Id.* at 343-44, 767 S.E.2d at 124-25. After the respondent signed the form, the court accidentally checked the box labeled "Parent's waiver is not knowing and voluntary." *Id.* The trial court later amended the order *sua sponte* to indicate that the respondent's waiver was indeed knowing and voluntary. *Id.* On appeal, we concluded that the checked box was an inadvertent clerical mistake in light of the trial court's "findings

on the form, and its additional, contemporaneous statements at that hearing." *Id.* at 344, 767 S.E.2d at 125.

¶ 33 Here, the issue before us likewise becomes whether the trial court's inclusion of an additional checked box on the amended no-contact order qualified as the amendment of a clerical mistake/omission, or instead was a substantive alteration of the order. We conclude the former characterization is more accurate—that the trial court's amendment qualified as the correction of a simple clerical mistake in failing to check the appropriate box in its first order.

¶ 34 As explained above, Rule 60(a) expressly contemplates the correction of omissions, and a "clerical mistake" can include "the inadvertent checking of boxes on forms." *In re J.K.P.*, 238 N.C. App. at 343, 767 S.E.2d at 125. Based on the trial court's findings and the evidence presented at the hearing, we conclude that the trial court most likely intended to originally check the box ordering that "[t]he defendant cease stalking the plaintiff," and that the omission of the check on this box in the first order was a clerical mistake.

¶ 35 Though the trial court did not make an explicit ruling on stalking, there was evidence before the court that Defendant had engaged in a sustained pattern of harassing and verbally abusing Plaintiff and his family members. During the hearing, the trial court stated to Plaintiff that "I'm certainly not convinced you're breaking into her house" and "I'm going to enter the order." In the written order, the

trial court's findings stated:

> The plaintiff has suffered unlawful conduct by the defendant in that: Defendant continuously harasses Plaintiff and Plaintiff's household. Posts letters on Defendant's door with an arrow stating Plaintiff is a "dangerous criminal." In open court Defendant stated "Plaintiff smells" and does so while in her yard at Plaintiff and Plaintiff's family.

These findings align with the definition of "stalking" as provided in the statute governing civil no-contact orders:

> Stalking. - On more than one occasion, following or otherwise harassing, as defined in G.S. 14-277.3A(b)(2), another person without legal purpose with the intent to do any of the following:
>
> > a. Place the person in reasonable fear either for the person's safety or the safety of the person's immediate family or close personal associates.
> >
> > b. Cause that person to suffer substantial emotional distress by placing that person in fear of death, bodily injury, or continued harassment and that in fact causes that person substantial emotional distress.

N.C. Gen. Stat § 50C-1(6) (2019).

In addition, on multiple occasions Defendant used language that could have placed "the [Plaintiff] in reasonable fear either for [his] safety or the safety of [his] immediate family or close personal associates." Plaintiff's uncontested testimony showed that Defendant sent threatening texts to Plaintiff on multiple occasions that implicated the safety of Plaintiff and his family:

- I hope the next person's house you break into blows your brains out, you stinky criminal.

- I hope someones [sic] blow your brains out. I bet your brains stink.

- I'm hoping someone will kill you, stinky criminal.

- I wish someone would wipe you and your whole family out.

- People like you deserve to die and get off the earth.

¶ 38 Plaintiff's sister-in-law testified that she "[doesn't] feel safe because I don't know if she might have a gun or whatever." Plaintiff's wife testified that "everybody was afraid" at a family gathering due to the actions of Defendant. A finding that Defendant was stalking Plaintiff was thus consistent with the definition found in N.C. Gen. Stat. § 50C-1(6) is supported by the uncontested testimony offered at the hearing.

¶ 39 In Defendant's brief, she cites to *State v. Briggs*, 249 N.C. App. 95, 790 S.E.2d 671 (2016), and *State v. Leaks*, 240 N.C. App. 573, 771 S.E.2d 795 (2015), for the proposition that "decisions should not be changed when the defendant is not present." These criminal cases are inapposite. Those holdings trace back to a longstanding common law right that requires that the accused criminal defendant "be personally present before the court at the time of pronouncing the sentence." *Ball v. United States*, 140 U.S. 118, 131 (1891). This common law right is not applicable in the present civil case.

¶ 40        In sum, we hold that the trial court's findings on the no-contact order and the

uncontested testimony reasonably supported a finding of stalking, thus showing that

the trial court made an inadvertent "clerical mistake" by *not* checking the box on the

first version of the no-contact order.  Accordingly, the trial court did not abuse its

discretion in correcting this omission in the amended order.

**E.  Mental Health Evaluation**

¶ 41        Defendant next argues that the trial court erred by requiring her to obtain a

mental health evaluation as part of the no-contact order.  In the written order, the

trial court checked box seven, entitled "Other: (specify)" and made a handwritten

notation ordering that:  "Defendant shall obtain a mental health evaluation.  Review

hearing on 12/8/20 in 4110 at 9:00am."  We disagree with Defendant's argument and

hold that the trial court did not abuse its discretion by ordering this evaluation.

¶ 42        To begin with, N.C. Gen. Stat. § 50C-5 grants a trial court considerable

discretion in awarding remedies when a no-contact order is issued:

> (a) Upon a finding that the victim has suffered unlawful
> conduct committed by the respondent, the court may issue
> temporary or permanent civil no-contact orders as
> authorized in this Chapter.  In determining whether or not
> to issue a civil no-contact order, the court shall not require
> physical injury to the victim.
>
> (b)  The court may grant one or more of the following forms
> of relief in its orders under this Chapter:
>
> . . .

> (7) Order other relief deemed necessary and appropriate by the court, including assessing attorneys' fees to either party.

N.C. Gen. Stat. § 50C-5(a)-(b) (2019).

Moreover, Chapter 50C is explicit about the non-exclusivity of the remedies laid out in Section 5—"[t]he remedies provided by this Chapter are not exclusive but are additional to other remedies provided under law." *Id.* § 50C-11 (2019).

This Court recently interpreted the limits of the remedies under § 50C-5 in *Russell v. Wofford*, 260 N.C. App. 88, 816 S.E.2d 909 (2018). In that case, the trial court issued a Chapter 50C no-contact order against a defendant who committed acts of nonconsensual sexual conduct against the plaintiff. *Id.* at 89, 816 S.E.2d at 910. Among the listed remedies, the trial court included in its order an "other" remedy requiring the defendant to surrender all firearms to the sheriff's department, revoking his concealed carry permit, and barring all firearm purchases for the duration of the order. *Id.* at 89-90, 816 S.E.2d at 910.

We ultimately reversed that portion of the order, holding that "District Courts do not have . . . unfettered discretion under Chapter 50C to order any relief the judge believes necessary to protect a victim." *Id.* at 94, 816 S.E.2d at 913. Despite the broad language of the statute, we nevertheless determined that ordering a defendant to surrender all firearms was too broad a remedy and was too tenuously connected to the issues raised by the no-contact order. *Id.* Instead, we concluded that "the catch-

all provision [in § 50C-5] limits the court to ordering a party to act or refrain from acting . . . in relationship to [the plaintiff.]" *Id.* at 93-94, 816 S.E.2d at 912-13 (citing *State v. Elder*, 368 N.C. 70, 72-73, 773 S.E.2d 51, 53 (2015)). We also emphasized that a Chapter 50C remedy must not abridge any fundamental rights guaranteed by the federal and state constitutions. *Id.*

¶ 46 We therefore held that requiring the defendant to surrender his firearms, revoking his concealed carry permit, and forbidding the purchase of firearms without statutory notice of those possibilities went beyond "ordering a party to act or refrain from acting in relationship to . . . [the] plaintiff." *Russell*, 260 N.C. App. at 94, 816 S.E.2d at 913 (internal marks and citation omitted).

¶ 47 In contrast, in the present case we do not believe that the single mental health evaluation ordered by the trial court went beyond the limits of § 50C-5 or abridged any of Defendant's fundamental constitutional rights. The remedy ordered by the trial court here was narrowly tailored; was directly related to the issues raised by the no-contact order; did not abridge any constitutional right; and was analogous to other remedies commonly awarded by trial courts in similar civil cases.

¶ 48 For example, the statute governing domestic violence protective orders states that a trial court may "[o]rder any party the court finds is responsible for acts of domestic violence to attend and complete an abuser treatment program if the program is approved by the Domestic Violence Commission." N.C. Gen. Stat. § 50B-

3(a)(12) (2019). Abuser treatment programs, also known as "batterer intervention programs," contain elements analogous to a basic "mental health evaluation."[3] This type of mental health program is one among a list of non-exhaustive remedies, comparable to the list in § 50C-5, containing no extra due process requirements. Rather, § 50C-5(b)(7) requires only that the trial court find the measure "necessary and appropriate."

¶ 49 In this regard, the trial court reasonably found the testimony offered at trial alarming enough to order the Defendant to "act in relationship to the Plaintiff" by completing a mental health evaluation, in order to aid Defendant in restoring peaceful relations with her neighbor and in examining her concerning beliefs that Plaintiff was breaking into her home.

¶ 50 Defendant's testimony and written submissions showed that she exhibited a number of concerning, delusional beliefs and behaviors in regards to Plaintiff, such as: (1) Defendant's baseless conviction that Plaintiff was continually breaking into her house, even though her home security system never indicated a break-in; (2) Defendant's belief that Plaintiff was "damaging her [heating] system by putting some type of substance in the pipes in the furnace lines"; (3) Defendant's belief that

---

[3] *See, e.g., North Carolina Batterer Intervention Programs: A Guide to Achieving Recommended Practices*, N.C. Council for Women (March 2013), https://files.nc.gov/ncdoa/BattererInterventionHandbook.pdf.

Plaintiff had "put some type of white powder all over everything in [her] house"; (4) Defendant's belief that Plaintiff was tampering with the food in her fridge; (5) Defendant's continued verbal harassment of Plaintiff and his family; and (6) Defendant's repeated texts containing death threats sent to Plaintiff and his family. Based on this evidence of Defendant's troubling beliefs and behaviors towards Plaintiff, we cannot conclude that the trial court overstepped the bounds of § 50C-5 in ordering Defendant to receive a mental health evaluation as part of the no-contact order. The trial court did not abuse its discretion in ordering the mental health evaluation.

**F. Failure to Consider Motion to Dismiss**

Defendant finally argues that the trial court abused its discretion by not considering the motion to dismiss which she filed prior to the hearing. We disagree and conclude that the trial court did not abuse its discretion by failing to consider Defendant's defective motion.

On 28 July 2020, shortly before the date of the hearing, Defendant filed a motion to dismiss—but did not serve the motion upon Plaintiff. At the hearing, the court stated that the court had not considered the documents in the file:

> MS. EDWARDS: Your Honor, I would like to -- I have a question. Did the documents that I submitted, are they in my file today?
>
> THE COURT: Whether they would be or not, ma'am, you

still have to follow the court rules and evidence rules in the courtroom. *I don't look at anything in the file.* I listen to the testimony and that's it. So if you have something you want me to look at, you would have to have them with you today.

MS. EDWARDS: I do.

THE COURT: Okay. Well, then you're going to be able to enter it into evidence later.

MS. EDWARDS: Okay.

THE COURT: When it's your turn.

¶ 53 From the record, it appears that Defendant's "motion to dismiss" was a document appended to her written answer. The answer was filed with Mecklenburg County District Court on 28 July 2020. However, the record contains no indication, nor does Defendant claim, that the motion to dismiss was ever served upon Plaintiff.

¶ 54 Rule 5(a) of the North Carolina Rules of Civil Procedure requires service of process for written motions: "every pleading subsequent to the original complaint . . . [and] every written motion . . . shall be served upon each of the parties." N.C. Gen. Stat. § 1A-1, Rule 5(a) (2019). Written motions must also be filed and served under Rule 5(d): "[t]he following papers shall be filed with the court, either before service or within five days after service: . . . (2) Written motions and all notices of hearing." *Id.*, Rule 5(d). A motion which is not served upon all parties is "procedurally flawed" and need not be considered by the court. *See Cap. Res., LLC v. Chelda, Inc.*, 223 N.C. App. 227, 242, 735 S.E.2d 203, 214, n.6 (2012).

¶ 55      Here, because Defendant's motion to dismiss was not properly served, the trial court acted properly in refusing to consider it. Moreover, Defendant was free to make an oral motion to dismiss at the hearing, but failed to do so. *See* N.C. Gen. Stat. § 1A-1, Rule 7(b). The trial court invited Defendant to present her evidence and submissions during the hearing, but Defendant did not bring the matter back up. We accordingly hold that the trial court did not err in refusing to consider Defendant's procedurally defective motion.

## III.     Conclusion

¶ 56      Because there was no error or abuse of discretion in any of the trial court's rulings, we affirm the no-contact order in all respects.

AFFIRMED.

Judge DILLON concurs.

Judge GRIFFIN concurs in result.